# Exhibit 1

U.S. Equal Employment Opportunity Commission
Pittsburgh Area Office

**ABIGAIL MULLEN,**

 Charging Party         EEOC Charge No. 533-2020-02085

 v.

**MSA SAFETY INCORPORATED,**

 Respondent

### CHARGE OF DISCRIMINATION

 1. I am the Charging Party, Abigail Mullen. Contact information for me and my legal counsel is below:

| | |
|---|---|
| **Abigail Mullen** | **David M. Manes, Esq.** |
| 7642 Big Beaver Blvd | RUPPERT MANES NARAHARI LLC |
| Wampum, PA 16157 | US Steel Tower 48th Floor |
| | 600 Grant St, Suite 4875 |
| | Pittsburgh, PA 15219 |
| | Direct: (412) 626-5550 |
| | Fax: (412) 650-4845 |
| | dm@rmn-law.com |

 2. The Respondent is MSA Safety Incorporated. The Respondent's location where I worked is 1000 Cranberry Woods Drive, Cranberry Township, PA 16066.

 3. I began working for Respondent in March 2015 as a Production Tech.

 4. My job duties included, but were not limited to, soldering, testing, manufacturing, part picking, and running calibration ovens.

 5. During the course of my employment, I notified the company that I have documented disabilities including anxiety disorder, panic disorder, Sphincter of Oddi dysfunction.

 6. My disabilities did not prevent me from performing the essential functions of my job with a reasonable accommodation.

 7. I had no problems during the tenure of my employment, until August 2019 when other employees of Respondent started to bully and harass me.

8. Abigail Jolly began the bullying and harassment because of her relationship with Tyler Smith, both were also a Production Tech.

9. Smith spoke to me regarding Jolly's sudden dislike of me. Jolly thought Smith talked to me too much and would get mad at him for speaking to me.

10. As the bullying continued, I had no other choice but to report Jolly's behavior to Margie Woods in the Human Resources Department on or about August 20, 2019, in hopes to have the problem solved.

11. On or about August 21, 2019, Woods, Jolly, myself, and Bernie Goia, my supervisor, attended this mediation Woods had set up.

12. During this mediation, Jolly told me I was delusional, despite Woods instruction prior to the mediation that there would be no name-calling or yelling.

13. Neither Woods nor Goia corrected Jolly for insulting me.

14. Woods stated "I refuse to investigate this" despite my ability to produce witnesses of the bullying and harassment.

15. Woods further stated that these issues were outside of the workplace, despite only seeing and experience bullying and harassment from Jolly at work.

16. The Respondent has a zero-tolerance policy for bullying. Woods and Goia both chose to ignore this policy, even when the harassment took place in front of them.

17. On or about August 22, 2019, I contacted my Production Manager, Shane Livingstone, for guidance because I was unhappy about the results of the mediation.

18. Instead of speaking to me privately, Livingstone approached me while I was working across from Jolly.

19. I was pushed by Livingstone to ignore the problems I was having with Jolly because my job would be in jeopardy if I continue to push for the bullying problem to be resolved.

20. This is the second time the Respondent's zero tolerance policy was ignored.

21. The bullying and harassment began to worsen and come from more employees of the Respondent other than just Jolly.

22. On or about September 23, 2019, I addressed the continued bullying to Goia. Now Jolly and RJ Suthers began bumping in to me while working on the production line. Neither apologized for the multiple occurrences, leading me to believe this was happening intentionally.

23. A card was passed around for another employee's birthday. Everyone was asked to sign the card, except for me.

24. Goia told me this wasn't a workplace problem, but he would speak to Woods about it. This is now the third time I reported workplace bullying and harassment, but the zero-tolerance policy was again, blatantly ignored.

25. I continued reporting instances of bullying and harassment from other employees. Due to the hostile work environment, I needed to take more time off under the Family Medical Leave Act ("FMLA") in order to address my exuberated illness.

26. The other employees began to make fun of my disability and started calling me crazy. The environment grew more hostile as others joined in on the bullying.

27. I eventually requested to be given another position so I could get away from those who were causing the undue stress, but my accommodation of a transfer was denied.

28. The problems continued into the year 2020 and I continued reporting the harassment.

29. As a result of a miscommunication between UNUM, the Respondent's third-party provider for FMLA time, and the Respondent in the beginning of 2020, FMLA days I had taken off were not properly recorded.

30. Woods and Goia attempted to terminate my employment. Woods said she had contacted UNUM herself and told me there was no record of days I had taken off.

31. I used UNUM's app for FMLA time and presented the evidence to Woods showing I did properly request these days off.

32. Despite having proof, the Respondent still suspended me for three days with a write-up for not reporting my time properly. I should have not have received a write-up or occurrences against my employee record for this problem.

33. On or about February 5, 2020, I was writing an email at work to address the bullying and harassment that I continued to face regarding Jolly's dislike of me and my disability.

34. While writing this email, Brendan Cujas, another Production Tech, came into my workspace and started to read over my shoulder.

35. I closed the computer, however, Cujas had already seen Smith's name in the email and told others about the email.

36. Later, Shawn McClean, had tried to bully me into telling him what the email had said.

37. I spoke to another coworker, Kimberly Pfeffer about the email situation. Pfeffer told me Smith had been watching me through the window and sent McClean to scare me into telling him what the email said.

38. Approximately one week after the email incident, I had a meeting with Michelle Monroe, a team member of the Human Resources Department. I told her about the harassment and bullying that had started in August of the prior year and continued until this point.

39. I confided in Monroe that I had been using more FMLA time recently because of the stress of the hostile work environment has been exuberating my disability and making me ill.

40. Monroe acknowledged the seriousness of my claims and said she would have an employee from a different location of the Respondent, to come and investigate the claims so there would be no bias opinions.

41. Monroe did not follow through with having someone from a different location investigate and instead investigated herself.

42. Monroe's results were not accurate. After ending her investigation, she concluded I was not being bullied and harassed but instead said that Jolly and Smith were just being childish and petty.

43. Monroe downplayed the seriousness of my claims and failed to take action. I continued to endure the hostile work environment.

44. In March of 2020, I had clocked in three minutes late. Panicking about this, I went directly to HR and spoke with Ashley Hohman about it.

45. Hohman informed me that this would count as half an occurrence and that I would be terminated. I was on a two year probationary period due to the incorrect write up I received at the beginning of the year.

46. After speaking to a different coworker, I learned that people had been calling off and using vacation time and not having any occurrences placed on their record.

47. I went back to HR to speak with Hohman about this.

48. She responded with "Oh yeah, I forgot about that." Hohman let me leave and take a vacation day instead of having a half of occurrence. This is the second time that the Respondent had tried to falsely terminate me.

49. On or about June 18, 2020, I spoke to UNUM regarding the discrepancy in my FMLA hours.

50. The UNUM app and letter I had received had two different amount of times. One said 30 hours while the other said 66 hours. The representative I spoke with verified that I had enough hours to cover the four days off in June, which weren't approved until July.

51. On or about July 7, 2020, Hohman and the on-site nurse told me that four of my FMLA days from June had been denied.

52. I told both of them that I had spoken to UNUM directly about my FMLA time and that I was informed that I had time left for June 17, 18, 19, and the 26th.

53. I had a letter from UNUM dated June 15, 2020, stating "as of June 15, 2020, you will have used 10 weeks, 25 hours, and 4 minutes of FMLA. You will have 1 week, 14 hours, and 56 minutes of FMLA remaining."

54. That letter also lead me to believe I had FMLA time remaining.

55. I received another letter dated July 14, 2020 stating "this letter is to inform you that June 12, 2020, is your last day of protected leave under the FMLA and you have no time remaining."

56. On or about July 17, 2020, I was terminated for taking June 17, 18, 19, and the 26th off without having the FMLA time to do so. I was originally told by UNUM that those days had already been taken out of my time.

57. Hohman told me I could have my job back if I could provide the Respondent with proof of UNUM giving me false information.

58. All phone calls to UNUM are recorded. UNUM refused to provide me with the recorded call and eventually stopped talking to me because I was no longer an employee of the Respondent.

59. On or about July 20, 2020, Joshua Wing, an UNUM representative reviewed the phone call between myself and the UNUM representative I spoke to on June 18, 2020. Wing stated there was a discrepancy between the information the representative gave me and the correct amount of FMLA hours I had remaining.

60. On or about July 21, 2020, I filed a complaint with the Respondent's ethics hotline regarding the hostile work environment, the lack of correction, and the miscommunication regarding my FMLA time.

61. On or about July 22, 2020, I spoke with the benefits administrator, Erin Bernhardt.

62. Bernhardt told me that UNUM denied giving me false information and instructed me to talk to UNUM directly, which, at this point I was unable to do.

63. Had the bullying and harassment been addressed properly, I wouldn't have used as much FMLA time and would not have gone over, regardless of the miscommunication between UNUM and the Respondent.

64. I believe that I was the victim of discrimination and wrongful termination in violation of the Americans with Disabilities Act and the Family and Medical Leave Act.

65. Based on the foregoing, I believe I was terminated due to my disability.

66. I further believe I was discriminated against and in retaliation for using time off under the Family and Medical Leave Act due to Respondent's failure to correct the hostile work environment.

67. I would like this Charge cross-filed with the PHRC and investigated by the EEOC.

68. I am willing to take part in EEOC mediation.

I swear, subject to penalty for perjury at law, that the foregoing is true.

_____  
Abigail Mullen

08/10/2020  
_____  
Date